IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| BLAKE R. WOTRING, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-01710-CRE-JFC |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS STOUGHTON, JOHN LALLY, | ) | |
| MARK ROBERTS,  SEKUWORKS, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, United States Magistrate Judge.

**I.      RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the motion to dismiss for lack of personal jurisdiction and failure to state a claim [ECF No. 15] filed by defendants John Lally, Mark Roberts, Thomas Stoughton and Sekuworks, LLC be granted insofar as the court does not have personal jurisdiction over defendants Thomas Stoughton, John Lally and Mark Roberts, and it is further respectfully recommended that in the interests of justice, this case be transferred to the United States District Court for the Southern District of Ohio.

**II.      REPORT**

a.    Factual Background

Plaintiff Blake R. Wotring brings the instant action against his former employer, Sekuworks, LLC ("Sekuworks") and several of its executives for allegedly failing to make bonus compensation and severance payments to Plaintiff under his employment contract and interfering with plaintiff's prospective business and employment relationships post-termination.

Plaintiff was retained as an independent contractor by Sekuworks through a staffing

1

agency to provide management and engineering services to Sekuworks on or about May 21, 2012. Sekuworks[1] specialized in security printing, brand protection software, brand protection labels, tamper tapes, labels and seals, security paper documents, intaglio printing and holograms for businesses and government entities. Plaintiff functioned as the Vice President of Engineering and Vice President of Operations in connection with an Ohio printing facility operated by Sekuworks. At the time plaintiff began working for Sekuworks, he lived in Pennsylvania and worked from home, occasionally traveling to Sekuworks' principle place of business in Ohio. Defendant Stoughton is a Georgia resident and an owner and manager of Sekuworks. In that capacity, defendant Stoughton oversaw the overall operations and day to day management and functioning of Sekuworks and specifically oversaw the activities and management of all senior management and staff. Defendant Lally is a resident of Georgia and an owner and manager of Sekuworks. In that capacity, defendant Lally oversaw the overall operations of Sekuworks. Defendant Roberts is also a resident of Georgia and owner and manager of Sekuworks and in that capacity was responsible for corporate compliance. Defendants Stoughton, Lally and Roberts will collectively be referred to as the "individual defendants."

On February 5, 2014, plaintiff entered into an employment agreement with Sekuworks to function as the Vice President of Engineering and Chief Technology Officer for Sekuworks and was in charge of software product development and sales support. Plaintiff alleges that defendant Stoughton, on behalf of the other individual defendants and Sekuworks, entered into contract negotiations with Plaintiff and his lawyer via telephone and email while plaintiff was residing in Pennsylvania and continued to work for Sekuworks from home in Pennsylvania. After plaintiff entered into the employment agreement with Sekuworks, he moved to Virginia in

---

[1]     Sekuworks ceased its operations on June 19, 2015.

November 2014 and continued to work for Sekuworks in Virginia.

The employment agreement provides plaintiff with a base salary, provides for incentive compensation, and provides for severance compensation. The employment agreement's provision for incentive compensation is "based on the performance objectives put in place by the CEO from time to time, and subject to the terms and conditions of the Management Incentive Compensation Plan as the same may be adopted by the Company[.]" Ex. A to the Employment agreement [ECF No. 11-1 at 10]. Under this provision, plaintiff was eligible for incentive compensation for his work for Sekuworks in 2013 when he was an independent contractor. *Id.* Additionally, the employment agreement provided for "Severance Payment" as follows:

> In the event of a termination of the Employee's employment for any reason, including expiration of the Term without renewal for additional extension periods, by reason of Death, Disability or Cause, or voluntarily by the Employee (with or without Good Reason), all payments to the Employee hereunder shall immediately cease and termination, except as hereinafter provided. In the event of a termination by the Company of the Employee's employment with the Company for any reason other than expiration of the Term without renewal, Death, Disability or Cause, or by the Employee for Good Reason, then the Company shall pay the Employee severance pay[.]

Employment Agreement [ECF No. 11-1 at 6] at § 6(e). The employment agreement further provides that the severance payment shall be equal to nine months of plaintiff's salary. *Id.*

### 1. *Failure to Pay Incentive Compensation*

In 2013, in accordance with the employment agreement, performance objectives were set for the entire software group of Sekuworks for purposes of determining, *inter alia*, performance bonuses for that group which included plaintiff. The performance objectives were met in 2013 and certain individuals in the group received bonuses based on the group's performance. However, plaintiff did not receive a performance bonus in 2013. Plaintiff alleges that defendant Stoughton acknowledged that plaintiff was entitled to a bonus for his performance in 2013 and

3

promised that he would receive a bonus. Plaintiff alleges that defendant Stoughton asked plaintiff to wait until after the employment agreement was executed to receive his bonus. Notwithstanding, plaintiff did not receive a bonus for 2013 after the employment agreement was executed. In 2014, the same performance objectives applied and were met, but plaintiff did not receive a performance bonus for 2014, while other individuals in his group received said bonuses in early 2015. Plaintiff alleges that he asked defendant Stoughton about the status of his bonus payments and plaintiff's attorney sent defendant Stoughton a letter inquiring the same. Notwithstanding, plaintiff never received a performance bonus for 2014.

### 2. *Failure to Pay Severance Compensation*

On June 15, 2015, Sekuworks advised its employees that it was ceasing its operations and employment was being terminated effective June 17, 2015. Plaintiff alleges that under the severance payment provision of the employment agreement, he should have received a severance payment, but he did not receive any such payment following his termination.

### 3. *Sale of Sekuworks*

After plaintiff's termination from Sekuworks in June 2015, representatives of Sekuworks, including the individual defendants, attempted to sell the company and/or its assets to various parties. The individual defendants asked plaintiff to assist in this process by describing the company's operations and assets, including software function, of Sekuworks to prospective buyers. Plaintiff agreed and assisted in this function. The endeavor to sell Sekuworks or its assets ultimately proved unsuccessful, and Sekuworks' principal creditor, Wells Fargo, assumed control of its assets. Wells Fargo thereafter proceeded to liquidate Sekuworks' assets and through this process, its assets were reacquired by the individual defendants in or about August or September 2015. The individual defendants continued in their efforts to sell the former assets

4

of Sekuworks post-liquidation and sought plaintiff's assistance with such efforts.

### 4. Plaintiff's Search for New Employment

At the same time that Sekuworks was winding up and dissolving, plaintiff was seeking new employment, including employment opportunities with entities that were exploring the purchase of certain former assets of Sekuworks. Plaintiff alleges that in discussions between the individual defendants and prospective buyers, which discussions were led primarily through defendant Stoughton, prospective buyers were informed that unless the individual defendants received an equity interest in the acquiring company, the acquiring company would be sued if they hired plaintiff to assist in implementing and/or managing the assets because plaintiff would be using confidential and proprietary information belonging to Sekuworks. Plaintiff alleges that the individual defendants also threatened legal action against prospective buyers if they hired plaintiff without acquiring any former Sekuworks assets.

Plaintiff likewise alleges that the individual defendants threatened legal action against third parties who plaintiff had discussions with for future business ventures. Specifically, plaintiff alleges that he discussed creating a company with James Hamilton, President/CEO and owner of Platinum Circle Technologies ("Platinum") concerning the creation of a company, in which plaintiff and Mr. Hamilton would be partners, and would develop software for brand protection and supply chain service industries. Plaintiff alleges that the software sought to be created could have been based on software developed in part by Sekuworks, and/or could have been based on newly developed software by plaintiff, Mr. Hamilton and/or Platinum. Plaintiff and Mr. Hamilton discussed that plaintiff's employment relationship would involve an equity interest in Platinum and plaintiff provided Mr. Hamilton with a prospective two-year budget, salaries for key employees, including himself, and ownership percentages. Thereafter, Mr.

Hamilton informed plaintiff that he could no longer move forward with the business relationship because the individual defendants and defendant Stoughton in particular, threatened Mr. Hamilton with litigation if he was to enter into a business or employment relationship with plaintiff. However, the individual defendants did not threaten legal action against Platinum when it hired a former Sekuworks software programmer, Erica Ziegler-Roberts, to assist in the development of brand protection software.

Plaintiff likewise had discussions with Robert Sherwood, Vice President of Sales for a division of Diversified Labeling Solutions ("DLS") regarding plaintiff's possible employment with DLS. However, plaintiff was not hired by DLS because, as plaintiff alleges, defendant Stoughton threatened DLS with legal action if the company hired plaintiff.

   b.  Procedural History

Plaintiff commenced the instant action in the Court of Common Pleas of Allegheny County, which was timely removed here by defendants on December 29, 2015. Plaintiff filed his first amended complaint on January 25, 2016 alleging the following claims against the defendants: (1) a breach of contract claim against defendant Sekuworks for failing to pay bonus and severance payments under the Employment agreement; (2) a violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.1, *et seq.*, against all of the defendants to recover unpaid wages and additional statutory damages; (3) an intentional interference with prospective economic advantages claim against the individual defendants for interfering with his potential employment with Platinum and DLS; (4) a civil conspiracy claim against the individual defendants for tortiously interfering with plaintiff's prospective economic advantages; and (5) a fraud claim against the individual defendants for falsely promising to pay plaintiff a bonus for his work for Sekuworks in 2013.

6

The defendants now move to dismiss plaintiff's claims. The individual defendants argue that this court has no personal jurisdiction over them and move to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(2) and alternatively argue that the case should be dismissed or transferred for improper venue. Sekuworks does not challenge this court's jurisdiction. Collectively, the defendants otherwise contend that plaintiff's WPCL and tort claims fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Sekuworks does not move to dismiss the breach of contract claim against it. Because this court finds that there is no personal jurisdiction over the individual defendants, and further recommends that the case be transferred to the United States District Court for the Southern District of Ohio, no recommendation will be made as to the merits of plaintiff's claims.

   c.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) – The
        Legal Standard

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Although Due Process does not require that a non-resident be physically present within the state, it does require that non-residents have "certain minimum contacts [with the state] . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A federal court sitting in diversity "may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)). "Pennsylvania authorizes the exercise of long-arm jurisdiction over non-residents 'to the full extent allowed under the Constitution of the United States.'" *Evanko v. WCDI, LLC*, 2012

WL 393261, at *2 (W.D.Pa. Feb. 6, 2012) (quoting 42 Pa. Cons. Stat. § 5322(b) and citing *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir. 1990)).

Once personal jurisdiction has been challenged, "[t]he burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff." *Metcalfe*, 566 F.3d at 330 (citations omitted). The plaintiff must meet this burden through "affidavits or other competent evidence," *id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)), and must provide "'specific facts' rather than vague or conclusory assertions." *Croyle v. Hutchinson*, 2012 WL 2358999, at *1 (W.D.Pa. June 20, 2012) (quoting *Marten v. Godwin,* 499 F.3d 290, 298 (3d Cir. 2007)). Whether the court has jurisdiction over a defendant is "inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984). When the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

Two types of personal jurisdiction exist: general and specific. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984)). Here, plaintiff only argues that the court should exercise specific jurisdiction over the individual defendants, therefore only that topic will be discussed in making this recommendation. The individual defendants argue that this court lacks jurisdiction over them, as they are all residents of Georgia and Sekuworks is a Delaware limited liability company with its principle place of business in Ohio, and none of the conduct which plaintiff complains of took place or caused injury in the Commonwealth of Pennsylvania. Plaintiff responds that he has alleged sufficient facts to demonstrate that the individual defendants purposefully availed themselves of the

8

Commonwealth by interacting with plaintiff in Pennsylvania and negotiating his employment agreement with him while he resided in Pennsylvania.

> The general three part inquiry as to whether specific jurisdiction exists is as follows:
>
> First, the defendant must have purposefully directed [his] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102-03 (3d Cir. 2009) (internal citations and quotation marks omitted). Specific jurisdiction exists over "nonresidents [who] have 'certain minimum contacts' with the forum state," *Walden*, 134 S.Ct. at 1118 (quoting *Int'l Shoe*, 326 U.S. at 316), when "the litigation . . . arise[s] out of or relate[s] to" those contacts with the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). The minimum contacts threshold requires a showing that a defendant has "'purposefully directed its activities' at the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Specifically, minimum contacts "must arise out of contacts that the 'defendant himself' creates with the forum," and not "'random, fortuitous, or attenuated' contacts [the defendant] makes by interacting with other persons affiliated with the State." *Walden*, 134 S.Ct. at 1122–23 (quoting *Burger King*, 471 U.S. at 475); *see also Rudolph*, 2013 WL 3168588, at *4 (finding that phone calls and e-mails from a financial advisor in Georgia to a Pennsylvanian plaintiff were merely "[i]nformational communications in furtherance of a contract between a resident and a nonresident" and that these "[did] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the non-resident defendant."); *Wilmington Fin., Inc. v. Moonis*, 2008 WL 4661033, *1–5 (E.D.Pa. 2008) (finding that "the existence of a contractual

relationship between [the plaintiff] and [the defendant was] not sufficient to give the court personal jurisdiction over [the defendant]" where the defendant had never been to the forum state, and the property that gave rise to the law suit was located in a different state); *Roetenberg v. King & Everhard, P.C.*, 2000 WL 1705787, at *4 (E.D.Pa. 2000) (observing that "contract formalities are not determinative for the purposes of jurisdiction . . . [and] the occasional placing of telephone calls or sending of letters into this forum is not sufficient to confer personal jurisdiction").

Similarly, "[m]ere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 134 S. Ct. at 1125 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id*. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. Likewise, specific jurisdiction is determined on a claim by claim basis because different considerations apply to separate claims. *O'Connor*, 496 F.3d at 318 n. 3.

The individual defendants first argue that the fiduciary shield doctrine prevents this court from exercising jurisdiction over them. Under this doctrine, a defendant is not individually subject to personal jurisdiction for actions taken in a forum on behalf of the corporation. *TJS Brokerage & Co. v. Mahoney*, 940 F. Supp. 784, 789 (E.D. Pa. 1996). The individual defendants would have the court find that all of their contact with the Commonwealth was made on behalf of Sekuworks and those contacts cannot be a basis for specific jurisdiction. However, as the individual defendants admit, the fiduciary shield doctrine does not protect a corporate officer who is alleged to have committed a tort in his corporate capacity or alleged to have violated a

statutory scheme that provides for individual and corporate liability for corporate acts. *See* Def.'s Br. [ECF No. 17] at 10 (citing *Boles v. Vanderbilt Shirt Co.*, No. CIV. A. 90-0862, 1990 WL 74202, at *2 (E.D. Pa. May 31, 1990); additional citations omitted). Here, as plaintiff points out, the individual defendants had significant roles in Sekuworks' corporate structure as co-owners of the company. Likewise, plaintiff alleges numerous tort claims against the individual defendants for their conduct and the WPCL permits individual liability. *See Belcufine v. Aloe*, 112 F.3d 633, 634 (3d Cir. 1997) ("Under Pennsylvania law, when a corporation fails to pay wages and benefits that it owes to its employees, the corporation's top officers can be held personally liable for the non-payments."). Accordingly, the individual defendants cannot use the fiduciary shield doctrine here to shield themselves from jurisdiction in Pennsylvania and the court will consider the individual defendants' contacts with the Commonwealth in their corporate capacity to determine whether they are subject to personal jurisdiction.

Because a court should consider specific jurisdiction on a claim by claim basis, each of plaintiff's claims will be addressed separately.[2]

### 1. WPCL

The theory of plaintiff's WPCL claim against the individual defendants is that the individual defendants subjected themselves to the requirements of the WPCL when they hired plaintiff, a Pennsylvania resident, negotiated an Employment agreement with plaintiff, and subsequently did not pay him the amounts allegedly owed under the bonus and severance payment provisions of the employment agreement.

As previously mentioned, the WPCL provides a cause of action for employees against

---

[2] While is it also true that jurisdiction should also be considered on a defendant-specific basis, *see Miller*, 384 F.3d at 95 n.1, given Plaintiff's allegations, the jurisdictional analysis for the individual defendants is identical and the court will not consider each defendant separately.

corporate officers in their individual capacities who fail to compensate an employee under an employment agreement. *See* 43 Pa. Stat. Ann. § 260.9a. The individual defendants argue that they have not had sufficient contact with Pennsylvania for the WPCL to apply. They argue that *Rychel v. Yates*, No. CIV.A. 09-1514, 2011 WL 1363751, at *1 (W.D. Pa. Apr. 11, 2011) is instructive in this regard.

In *Rychel*, the plaintiff, a Pennsylvania resident, sued two corporate officers and residents of North Carolina for breach of contract and fraudulent inducement in connection with the plaintiff's investment in a condominium project to be built in Turks and Caicos. *Id.* at *2. The defendant corporate officers made numerous phone calls, emails and faxes to plaintiff in connection with negotiating the option agreement and were parties to said agreement. *Id.* at *2-*9. The defendant corporate officers contested their personal jurisdiction in Pennsylvania on the breach of contract claim, and the court found that it had no jurisdiction over the corporate officers on the breach of contract claim because the contacts the corporate officers made with the plaintiff in Pennsylvania were made on behalf of the corporation and not on behalf of the individual corporate officers. *Id.* at *12.

While the individual defendants in this case would have this court apply the same reasoning used in *Rychel* to conclude that no jurisdiction exists over them, the *Rychel* decision is factually distinguishable. The plaintiff in *Rychel* brought a breach of contract claim against the corporate officers; no such claim exists here. Additionally, no alleged WPCL claim was brought in *Rychel*, as no employment relationship existed between the parties in that case. Thus, this court is strained to apply the reasoning in *Rychel* to find a lack of personal jurisdiction over the individual defendants for a WPCL claim.

Notwithstanding the inapplicability of *Rychel*, other courts when faced with the decision

12

of whether to exercise specific jurisdiction over non-resident corporate officers alleged to have violated the WPCL have found that if the corporate officer's contacts and activities within Pennsylvania did not concern or relate to the conduct allegedly violating the WPCL claim, no jurisdiction over the corporate officer exists.

An alleged violation of the "WPCL law alone is an insufficient basis for [a] court to extend personal jurisdiction over" a non-resident defendant. *Sudofsky v. JDC Inc.*, No. CIV.A. 03-CV-1491, 2003 WL 22358448, at *3 (E.D. Pa. Sept. 8, 2003) (citations omitted). There must also be sufficient contacts between the non-resident defendant and the forum related to the cause of action for the court to confer jurisdiction. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). "Only violations of the []WPCL occurring within the Commonwealth are a proper basis for jurisdiction." *Sudofsky*, 2003 WL 22358448, at *3 (citing *Cent. Pennsylvania Teamsters Pension Fund v. Burten*, 634 F. Supp. 128, 132 (E.D. Pa. 1986)).

In *Pieretti v. Dent Enterprises, Inc.*, No. CIV.A. 11-2179, 2011 WL 6425333, at *4 (E.D. Pa. Dec. 21, 2011), the court refused to exercise jurisdiction over a defendant chief executive officer for an alleged failure to pay overtime in violation of the WPCL. While the corporate officer visited Pennsylvania, made phone calls and sent emails to residents of the Commonwealth to generate business for the company, because none of these contacts with the Commonwealth related to the Plaintiff's alleged entitlement of wages, the court found that no jurisdiction over the corporate officer existed. *Id.* at *3-*4 (the court must look to only the defendant's contacts with the forum and not his potential liability under the WPCL to determine the existence of personal jurisdiction). *See also Sudofsky*, 2003 WL 22358448 at *3-*4 (no specific jurisdiction over non-resident corporate officer for WPCL violations where the alleged oral representations for paying plaintiff bonus and commission payments were made by the

13

corporate officer to plaintiff while on a business trip in Pennsylvania and plaintiff was Pennsylvania resident).

The crux of plaintiff's argument is that the individual defendants negotiated plaintiff's employment agreement with him while he resided in Pennsylvania and worked for Sekuworks from his home in Pennsylvania, thus this contact with Pennsylvania should allow this court to exercise jurisdiction over the individual defendants. *See* Pl.'s Op. Br. [ECF No. 18] at 18. This court is not convinced that the individual defendants' act of negotiating a contract with plaintiff in 2014 is enough to show that the individual defendants purposefully directed any activities at the Commonwealth in connection with their decision to not pay plaintiff bonus or severance compensation. Likewise, the second factor – that the litigation must arise out of or relate to the non-resident defendant's activities with the forum – has not been met. There are no set of facts alleging that the individual defendants' decision to not compensate plaintiff under the employment agreement for bonus or severance compensation occurred in Pennsylvania. It is undisputed that plaintiff moved to Virginia in November 2014, and his employment was terminated June 17, 2015, ostensibly obligating Sekuworks to pay severance compensation in 2015, thus plaintiff cannot show any contact with Pennsylvania in the individual defendants' decision to not pay plaintiff severance compensation.

Plaintiff's bonus compensation was due after the employment agreement was entered into for 2013 and after the performance standards were met and bonus compensation was paid to other individuals in 2015. As to the former, the individual defendants' contact with Pennsylvania in negotiating plaintiff's employment agreement is too attenuated to find that they purposefully availed themselves of the forum in their failure to pay bonus compensation as set forth in the employment agreement. As to the latter, there is no evidence of contact with the

14

Commonwealth, as this decision was made after plaintiff moved to Virginia. It is of no consequence that plaintiff alleges that he remains a Pennsylvania resident, as "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *O'Connor*, 496 F.3d at 317.

Lastly, even if the first and second factors were present, it would run contrary to the notions of fair play and substantial justice to haul the individual defendants into Pennsylvania to adjudicate plaintiff's claims. *See Burger King*, 471 U.S. at 477 (factors relevant to this analysis include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.").

By virtue of geography, there would be a great burden on the individual defendants, all Georgia residents, being forced to adjudicate the suit in the United States District Court for the Western District of Pennsylvania. More importantly, Pennsylvania has little interest in adjudicating this matter, as the employment agreement which is the subject matter of a majority of Plaintiff's claims provides for the application of Ohio law, Sekuworks has its principle place of business in Ohio and is incorporated in Delaware. Likewise, plaintiff cannot even argue that Pennsylvania is a convenient forum for him, as he admittedly resides in Virginia and has since 2014. The court finds that these facts are compelling in finding that continuing suit in Pennsylvania would not comport with fair play and substantial justice.

Accordingly, this court does not have specific jurisdiction over the individual defendants for plaintiff's WPCL claim.

### 2. *Intentional Interference with Prospective Economic Advantages*

With respect to considering specific jurisdiction over non-resident defendants for intentional torts, the Court of Appeals for the Third Circuit has suggested that the district court apply the "effects test" as established in *Calder*, 465 U.S. at 783-791. *Remick*, 238 F.3d at 258 (3d Cir. 2001); *See also Walden*, 134 S. Ct. at 1125 (applying *Calder*). The effects test is comprised of three factors: first, the non-resident defendant must have committed an intentional tort; next, the plaintiff must feel the brunt of the harm in the forum such that the forum is fairly considered the focal point of the harm suffered; and finally the defendant must have expressly aimed his tortious conduct at the forum such that it is the focal point of the harm suffered. *Remick*, 238 F.3d at 258.

If these elements are satisfied, the plaintiff can "demonstrate a court's jurisdiction over a defendant even where the defendant's 'contacts with the forum alone are far too small to comport with the requirements of due process' under the [Court of Appeal's] traditional analysis." *Marten*, 499 F.3d at 297 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The benchmark factor is that the non-resident defendant "expressly aimed [his] tortious conduct at the forum." *IMO*, 155 F.3d at 266. The plaintiff must demonstrate this by showing the "defendant knew that the plaintiff would suffer the brunt of harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed [his] tortious conduct at the forum." *Marten*, 499 F.3d at 297-98 (citations omitted). In other words, the plaintiff must show that the defendant "intentionally targeted" his behavior at and "focused on the forum." *IMO*, 155 F.3d at 265. Simply asserting that the defendant knew or should have known that the plaintiff was located in the forum is not enough to confer jurisdiction. *See Rychel*, 2011 WL 1363751 at * 13; *Shafik v. Curran*, No. CIV.A.1:09-CV-02469, 2010 WL 2510194, at *6 (M.D. Pa. June 17, 2010). Most importantly, the plaintiff's

residence does not, without more, create jurisdiction over a non-resident defendant. *Marten*, 499 F.3d at 298.

Here, plaintiff alleges that the individual defendants intentionally interfered with plaintiff's prospective economic advantages when the individual defendants, through defendant Stoughton, threatened legal action against every company that plaintiff sought employment with, or sought to engage in a business relationship with. It is undisputed that this allegedly occurred after plaintiff was terminated from Sekuworks in 2015. It is further undisputed that plaintiff has lived in Virginia since 2014. Accordingly, there is no allegation that any of the defendants expressly aimed any of their alleged tortious activity in threatening legal action in Pennsylvania. Likewise, plaintiff's argument that he remains a Pennsylvania resident notwithstanding the fact he has resided in Virginia since 2014 is unavailing. *See O'Connor*, 496 F.3d at 317. This fact, without showing any intentional conduct directed at Pennsylvania by the individual defendants, does not create jurisdiction in Pennsylvania. Plaintiff's argument that he collected unemployment compensation from the Commonwealth of Pennsylvania, paid Pennsylvania taxes or that his Sekuworks paychecks were deposited into a Pennsylvania bank account and his plan to vote in Pennsylvania in the upcoming presidential election via absentee Pennsylvania ballot is unavailing for this same reason and has no bearing on whether the individual defendants expressly aimed their tortious conduct by threatening legal action against plaintiff's prospective business and/or employment ventures at the Commonwealth.

### 3. Fraud

As for plaintiff's fraud claim, he alleges that the individual defendants falsely promised plaintiff that he would receive a retroactive bonus payment for his work as an independent contractor with Sekuworks in 2013 to induce plaintiff in signing the employment agreement with

Sekuworks, and that this occurred when plaintiff lived in Pennsylvania.

The court is strained to find that emails or phone calls made by defendant Stoughton to plaintiff in Pennsylvania promising a bonus payment in 2014 prior to plaintiff leaving Pennsylvania is enough contact with the Commonwealth such that the individual defendants can be found to have expressly aimed their tortious conduct at the Commonwealth and that plaintiff felt the brunt of his harm in Pennsylvania. *See Rychel*, 2011 WL 1363751 at \*16 (four separate fraudulent misrepresentations made over numerous phone calls and emails were not enough contact to show non-resident defendant expressly aimed their conduct towards Pennsylvania); *Roetenberg, supra*.

In conclusion, the court finds that there is no basis to exercise personal jurisdiction over the individual defendants for the claims plaintiff levies against them.

d.  <u>Motion to Transfer Venue</u>

Having concluded that there is no basis to exercise personal jurisdiction over the individual defendants, the question remains as to whether the case should be transferred to another district or be dismissed. *See Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985) (if a district court lacks personal jurisdiction, the case can be transferred to the proper forum); 28 U.S.C. § 1631 (if it is in the interests of justice, a court may *sua sponte* transfer a matter to a judicial district where the matter could have originally been brought and the action shall proceed as if it had been filed in the court to which it is transferred on the date upon which it was filed in the court from which it was transferred).

Defendants argue that this case should be transferred either to the United States District Court for the Northern District of Georgia where the individual defendants reside, or to the United States District Court for the Southern District of Ohio, where the substantial amount of

acts or omissions are alleged to have occurred.

In the instant matter, the interests of justice are better served if this case is transferred to the United States District Court for the Southern District of Ohio. This is the venue where a substantial part of the events or omissions giving rise to plaintiff's claims occurred, 28 U.S.C. § 1391(a), it will eliminate the need for plaintiff to incur additional filing costs and avoid any statute of limitations issues that could arise from outright dismissal of this case. The venue is likewise proper for the claims against Sekuworks, as it is the location of its principle place of business, and the employment agreement called for the application of Ohio law. It will likewise prevent plaintiff in having to adjudicate his claims in different forums against the individual defendants and Sekuworks. While the court is cognizant of the fact that transferring this case to the United States District Court for the Southern District of Ohio may cause inconvenience and travel costs, said inconvenience and cost will affect both parties equally, as they will both have to travel to Ohio for litigation, and otherwise, additional costs and inconvenience does "not entitle the Court to disregard well-established jurisdictional requirements." *Rychel*, 2011 WL 1363751 at * 17 (citations omitted). Additionally, because this court finds that there is no jurisdiction over the individual defendants and recommends transferring this case to another venue, no opinion will be expressed regarding the merits of plaintiff's claims, as any merits decision is better left to the Ohio court.

## III.    CONCLUSION

Based on the foregoing, the court finds that the individual defendants are not subject to personal jurisdiction in Pennsylvania. However, because the action could have originally been brought in the United States District Court for the Southern District of Ohio, and because a transfer is in the interests of justice, the court recommends that the case be transferred to that

district, rather than dismissed, pursuant to 28 U.S.C. § 1631.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until September 12, 2016 to file objections to this report and recommendation.  Unless Ordered otherwise by the District Judge, responses to objections are due September 26, 2016.  Failure to file timely objections may constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).


Dated: August 29, 2016.                                      By the Court,
                                                             s/ Cynthia Reed Eddy
                                                             Cynthia Reed Eddy
                                                             United States Magistrate Judge


cc:     Honorable Joy Flowers Conti
        United States Chief District Judge
        *via electronic filing*

        *Counsel of record via electronic filing*